IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOLIVER ARMSTRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-3610-BT |
| | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Toliver Armstrong's Motion to Remand (ECF No. 6) this civil action for negligence and negligence per se to state court, arguing Defendant Southwest Airlines Co.'s (Southwest's) "snap removal" was improper. Pl.'s Mot. ¶¶ 1-5. For the following reasons, the Court finds Southwest properly removed this case and DENIES Armstrong's Motion to Remand.

## **Background**

Armstrong filed this lawsuit on December 1, 2020, in the 68th Judicial District Court of Dallas County, Texas. Def.'s Not. Rem. 1 (ECF No. 1). Southwest, invoking federal diversity jurisdiction, filed a Notice of Removal removing the suit to this Court on December 10. On January 11, 2021, Armstrong filed a Motion to Remand arguing that the "forum defendant rule" prevents Southwest, a Texas citizen, from removing a case filed in a Texas state court on the basis of diversity jurisdiction. Pl.'s Mot. ¶¶ 1-5. In response, Southwest claimed that it had not been served when it filed for removal and, therefore, the forum-defendant rule is

1

inapplicable. Def.'s Resp. 1 (ECF No. 8). Armstrong submitted a Reply (ECF No. 12) objecting that Southwest had in fact been served at the time of removal. Pl.'s Reply ¶¶ 1-6.

As explained below, 28 U.S.C. § 1441(b)(2) permits a forum defendant to remove a case to federal court before the plaintiff formally serves it. And here, Armstrong failed to show that he served Southwest before Southwest filed its Notice of Removal. Therefore, Southwest's snap removal was not improper. Armstrong's Motion to Remand is denied.

**Legal Standards**

I. <u>Federal Jurisdiction and Removal</u>

Federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Scalia, J.) (internal citations omitted). Generally, unless otherwise provided by statute, federal courts only have jurisdiction over cases involving (1) a federal question arising under the Constitution, a federal law, or a treaty, or where there exists (2) complete diversity of citizenship between adverse parties, and the case satisfies the amount in controversy. *See* 28 U.S.C. §§ 1331, 1332. In diversity cases, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *Id*. § 1332(a).

A defendant may remove an action filed in state court to federal court if it could have originally been filed in federal court. *Id*. § 1441(a). Because removal

raises significant federalism concerns, courts strictly construe the removal statute. *See Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). And courts resolve any doubts as to the propriety of removal in favor of remand. *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

Under 28 U.S.C. § 1441(b)(2), "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2). Thus, in diversity cases, § 1441(b)(2)—known as the forum defendant rule—bars removal when the removing defendant is a citizen of the forum state. Snap removal is a litigation tactic sometimes employed by a forum defendant to circumvent § 1441(b)(2) by removing a case to federal court after a plaintiff files the case in state court but before the plaintiff formally serves the defendant under state law. *See Baker v. Bell Textron, Inc.*, 2021 WL 1377372, at *2 (N.D. Tex. Apr. 12, 2021)

II. Effective Service of Process

"In removed cases, the question [of] whether the plaintiff has properly served the defendant is determined by reference to the applicable state law." *Thevenet, v. Deutsche Bank Nat'l Trust Co.*, 2017 WL 4475880, at *2 (N.D. Tex. Oct. 6, 2017) (Fitzwater, J.) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999)). Additionally, "[w]hen service of process is challenged, the serving party bears the burden of proving its validity or good cause

3

for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (internal citations omitted).

Under Texas law, a plaintiff can effect service by "mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition." TEX. R. CIV. P. 106. Additionally, the "officer or authorized person" who serves the defendant "must complete a return of service." *Id.* R. 107(a). When a plaintiff attempts service by certified mail, "the return by the officer or authorized person must also contain the return receipt with the addressee's signature." *Id.* R. 107(c). A post office "green card," returned from the delivery of certified mail, will satisfy the return receipt requirement. *See HWAT, Inc. v. Agnew*, 2021 WL 1229960, at *3-4 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.). However, "if the return receipt is signed by someone [other than the addressee], service of process is defective" *Hennington v. UPS*, 2018 WL 6267768, at *2 (S.D. Tex. 2018) (internal citations omitted).

**Analysis**

In this case, the parties' citizenship and the amount-in-controversy are not in dispute. Armstrong is a citizen of Nevada; Southwest is a Texas corporation with its headquarters and principal place of business in Texas. Def.'s Not. Rem. ¶¶ 7-8. Armstrong seeks more than $1,000,000 in damages from Southwest. Pl.'s Pet. 1-2, ¶ 3 (ECF No. 1-3). Thus, there is no question that this case is removable because federal diversity jurisdiction exists. Whether Armstrong is entitled to remand, however, turns on the application of the forum defendant rule and the propriety of

Southwest's snap removal.

I. <u>An unserved defendant is not restricted by the forum defendant rule.</u>

Section 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and *served as defendants* is a citizen of the State in which such action is brought." 28 U.S.C. § 1441 (b)(2) (emphasis added). Thus, under the unambiguous language of the statute, the forum-defendant rule only applies to parties who have been "served as defendants." An unserved defendant is not restricted by the forum defendant rule. *See Texas Brine Co., LLC v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (holding that diversity cases are properly removable "until a home-state defendant has been served") (internal citations omitted).

While Armstrong correctly points out that the recent Fifth Circuit decision endorsing snap removal arose in the context of removal by a non-forum defendant, the Fifth Circuit heavily relied on decisions by the Second Circuit and Third Circuit that allowed forum defendants to use snap removal. *Texas Brine Co.* at 485-87 (citing *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705-06 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153 (3d Cir. 2018)). Additionally, multiple Texas district court opinions—including several in this district—have held that the reasoning of *Texas Brine* applies to forum defendants. *See, e.g., Serafini v. Southwest Airlines Co.*, 485 F. Supp. 3d 697, 702-03 (N.D. Tex. 2020) (Starr, J.) (specifically rejecting argument that *Texas Brine* should be

5

limited to cases removed by non-forum defendants because allowing a forum defendant to use snap removal as an end-around the forum-defendant rule would be absurd); *Stevens v. Kimberly-Clark Corp.*, 2021 WL 3232423, at *3 (N.D. Tex. July 29, 2021) (Scholer, J.) ("[B]based on the plain meaning of 28 U.S.C. § 1441(b)(2) and the Fifth Circuit's decision in *Texas Brine*, the Court finds that [the forum defendant] properly removed this case [before it was served]."); *Mirman Grp., LLC v. Michaels Stores Procurement Co., Inc.*, 2020 WL 5645217, at *2 (N.D. Tex. Sept. 22, 2020) (Fitzwater, J.) ("*Texas Brine*'s reliance on recent decisions by the Second and Third Circuits—both of which permitted snap removal by forum defendants—supports the court's conclusion [to allow snap removal by a forum defendant].") (internal citations omitted); *Latex Constr. Co. v. Nexus Gas Transmission*, 2020 WL 3962247, at *6 (S.D. Tex. July 13, 2020) ("The plain language of § 1441(b)(2) allows for removal of suits involving a single defendant who is a resident of the forum state and such construction is not an absurd result.").

Armstrong urges the Court to look to other district court cases that criticize the notion that forum defendants may utilize snap removal. Pl.'s Reply at ¶¶ 12-15; *see also Breitweiser v. Chesapeake Energy Corp.*, 2015 WL 6322625, at *7 (N.D. Tex. October 20, 2015); *Smethers v. Bell Helicopter Textron Inc.*, 2017 WL 1277512, at *3 (S.D. Tex. 2017). The cases cited by Armstrong are distinguishable because they predate *Texas Brine*. *Mirman Grp.*, 2020 WL 5645217, at *3 (rejecting arguments against snap removal by a forum defendant based on same

6

district court cases). Indeed, the courts in both cases on which Armstrong relies specifically "noted the absence of any circuit court guidance on the issue" of snap removal. *Id.* (citing *Smethers*, 2017 WL 1277512, at *2; *Breitweiser*, 2015 WL 6322625, at *3). The Fifth Circuit changed that in 2020 when it decided *Texas Brine*. Since then, the district courts in this Circuit have agreed that forum defendants may utilize snap removal. *See id.* (collecting authority).

Because Armstrong's only other arguments are based on nonbinding cases from outside the Fifth Circuit, the Court follows the plain language of § 1441(b)(2) and the weight of authority from within this Circuit. The Court concludes that Southwest may use snap removal to avoid violating the forum defendant rule. Accordingly, the Court turns to whether Southwest properly utilized the tactic in this case.

II. <u>Armstrong failed to show he properly served Southwest under Texas law before Southwest removed this case to federal court.</u>

Southwest was entitled to remove this diversity case to federal court so long as Armstrong had not served Southwest as a defendant before it filed the Notice of Removal. Armstrong claims that he served Southwest by certified mail on December 10, 2020 at 6:41 AM and Southwest filed its Notice of Removal more than three hours later—on 9:58 AM on the same day. Pl.'s Mot. ¶ 11. As evidence for this timeline, Armstrong presents a printout of the online tracking available for certified mail, Pl.'s Mot. Ex. C 5-6 (ECF No. 6-3), and a receipt of delivery in the form of a post office "green card." Pl.'s Mot. Ex. A 5 (ECF No. 6-1). Southwest,

7

meanwhile, claims it was never properly served because the receipt of delivery provided by Armstrong was not signed by Southwest's registered agent for process. Def.'s Resp., 4.

As noted above, "[w]hen service of process is challenged, the serving party bears the burden of proving its validity . . . ." *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990) (internal citations omitted). Accordingly, in this case Armstrong must prove that his service of Southwest was valid under Texas law. *See Thevenet, v. Deutsche Bank Nat'l Trust Co.*, 2017 WL 4475880, at *2 (N.D. Tex. Oct. 6, 2017) (Fitzwater, J.) ("In removed cases, the question [of] whether the plaintiff has properly served the defendant is determined by reference to the applicable state law."). To do so, Armstrong must prove that the return receipt he has provided contains the "addressee's signature." TEX. R. CIV. P. 107. Here, Armstrong presents a green card addressed, in relevant part, to Corporation Service Company (CSC), a corporation acting as Southwest's registered agent. Pl.'s Mot. Ex. A 5; Pl.'s Mot. Ex. D 2, 4 (ECF No. 6-4).

In Texas, a corporation may act as the registered agent for another corporation. *See* TEX. BUS. ORGS. CODE § 5.201(b). However, a corporation acting as a registered agent "must be served through its [human] agents." *Asset Prot. & Sec. Servs., L.P. v. Armijo*, 570 S.W.3d 377, 383 (Tex. App.—El Paso 2019, no pet.) (citing *All Commercial Floors, Inc. v. Barton & Rasor*, 97 S.W.3d 723, 727 (Tex. App.—Fort Worth 2003, no pet.)). Accordingly, a number of Texas cases have held that to prove service was properly accomplished by certified mail the return receipt

8

or green card must show a "connection between the person signing for the process and the actual addressee." *Id.* a 383-84 (collecting authority). In other words, service is defective on its face if the green card or return receipt does not show "the signatory's relationship to the registered agent." *Id.* at 384; *HWAT, Inc. v. Agnew*, 2021 WL 1229960, at *3-4 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.).

Therefore, in order to meet his burden to prove that service was effective, Armstrong must show that the green card was signed by a human agent of CSC. To meet his burden, Armstrong provides the green card itself, seen below as taken from Pl.'s Mot. Ex. A 5:



Armstrong further provides an affidavit from the process server stating that this "signed green card indicates that the . . . [service documents were] delivered to the addressee on December 10, 2020." Pl.'s Mot. Ex. B 2 (ECF No. 6-2).

9

However, it is readily apparent that this green card is insufficient evidence to meet Armstrong's burden of proving that service was properly given to an agent of CSC. The signature on the green card is illegible and useless in determining what person actually took possession of the documents. The signatory did not print his or her name or check either the box marked "Agent" or "Addressee" next to the signature block. In the box provided for an alternate address if the documents were not delivered to the addressee, the signatory provided only the letters "AAO." *Id.*

Armstrong's post office tracking information is no more helpful. Pl.'s Mot. Ex. C 5-6. As is shown below, this tracking information only claims that the service documents were "picked up at a postal facility at 6:41 am on December 10" by an unnamed "[i]ndividual."

```
December 10, 2020, 6:41 am
Delivered, Individual Picked Up at Postal Facility
AUSTIN, TX 78760
Your item was picked up at a postal facility at 6:41 am on December 10, 2020 in AUSTIN, TX 78760.
```

Like the green card, this tracking information provides no explanation for what relationship the signatory of the green card had, if any, with Southwest or its registered agent—and so Armstrong's service was defective.

Armstrong argues that the green card in this case was signed by CSC, Pl.'s Mot. ¶ 11, or a courier service employee who was acting as an agent of CSC, Pl.'s Reply ¶¶ 1-2, at the time the service documents were purportedly picked up from the post office. In support of his second argument, Armstrong cites to a CSC representative's affidavit that outlines CSC's mail policies, specifically noting that

10

a courier typically signs the certified mail return cards. Pl.'s Reply ¶ 1. While Armstrong reasons, "it *most likely* was a courier service employee who signed it," (emphasis added), this presumed likelihood falls short of meeting his burden to prove that service was proper. *Id.* ¶ 2.

In a similar case, the Texas Court of Appeals in El Paso found that a green card addressed to a corporation was ineffective because it failed to demonstrate a relationship between the addressee and the signatory. *Asset Prot.*, 570 S.W.3d at 384. The court specifically noted that the signatory did not check the "Agent" or "Addressee" boxes and reasoned that "[i]f the individual who signs the receipt of delivery is not the addressee or an agent otherwise capable of receiving service, service of process is invalid." *Id.* Other Texas Courts of Appeal have similarly held that a defectively completed green card renders service inadequate. *See HWAT*, 2021 WL 1229960, at *3–4 ("A green card's failure to connect the person signing the green card with the entity being served makes service defective on its face.") (internal citations omitted); *Ny-Mac Enter., Inc. v. Orr*, 2018 WL 2436350, at *2 (Tex. App.—Texarkana May 31, 2018, no pet.) ("Where, as here, both the 'Agent' and 'Addressee' boxes were left unchecked on the green card, the record does not indicate Casey's connection, if any, with InCorp Services.") (internal citations omitted); *Paving & Seal Pro v. McConnell Cars & RV, LLC*, 2017 WL 2350973, at *2 (Tex. App.—San Antonio May 31, 2017, no pet.) ("Because the record does not indicate Lisa Palmer's capacity or authority, if any, to receive service, appellee failed to establish that either Brooks or PSP were served through her in accordance

11

with applicable requirements."); *Alamo Home Fin., Inc. v. Duran*, 2015 WL 4381091, at *5 (Tex. App.—Corpus Christi July 16, 2015, no pet.) (finding service defective because "the return of receipt [was] signed, illegibly, . . . [and] [b]oth the 'agent' and 'addressee' boxes [were] left unchecked").

Texas law requires that the green card itself show some indication of the relationship between the addressee and the signatory. And ultimately, the scribbles and scratches on the face of the green card in this case fail to explain the nature of the relationship between whoever signed it and Southwest or its registered agent. Therefore, Armstrong's service of Southwest was ineffective on its face at the time Southwest submitted its Notice of Removal.

## Conclusion

Because Southwest was not properly served under Texas law when it filed its Notice of Removal, the forum defendant rule did not prohibit it from removing the case to federal court. Accordingly, the Court DENIES Armstrong's Motion to Remand (ECF No. 6).

SO ORDERED.

September 15, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE